IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHUCK LEPOLD HARPER, | § | |
| TDCJ #460969, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3435 |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent.[1] | § | |

## MEMORANDUM AND ORDER

Texas inmate Chuck Lepold Harper (TDCJ #460969) has filed a federal petition for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state court conviction. Harper has also filed a lengthy memorandum of law in support of his petition. The respondent has answered with a motion for summary judgment, arguing that Harper is not entitled to relief. [Doc. # 15]. Harper has filed a response and he has requested an evidentiary hearing. [Docs. # 16, # 17]. After considering all of the pleadings, the state court records, and the applicable law, this Court **grants** the respondent's motion for summary judgment and **dismisses** this case for reasons set forth below.

---

[1]     The petition names Nathaniel Quarterman as the respondent. Because Quarterman has retired as Director of the Texas Department of Criminal Justice - Correctional Institutions Division, the Court substitutes his replacement, Rick Thaler, as the proper respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I.     BACKGROUND

Harper is an inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"), who seeks habeas corpus relief in federal court from a state court felony conviction.  According to the state court records, a Harris County grand jury returned an indictment against Harper in cause number 1006667, alleging that he committed aggravated robbery on November 8, 2004, by using or exhibiting a deadly weapon, "to wit: a knife," during the commission of the offense.  *Clerk's Record*, at 21.  The State of Texas enhanced that indictment for purposes of punishment with allegations that Harper had at least two prior felony convictions for aggravated robbery in Harris County cause numbers 312879 and 473251. *See id.*

Harper's trial commenced on March 17, 2006, before a jury in the 351st District Court of Harris County, Texas.  After deliberating for several hours during the guilt-innocence portion of the trial, the jury sent out a note indicating that it was "hung."  *Clerk's Record*, at 55.  A subsequent note sent out by the jury indicated that they were "deadlocked" over whether Harper used a knife during the commission of the offense.  *See id.* at 56.  Because the jury was unable to reach a verdict as to Harper's guilt or innocence of the aggravated robbery charges, the trial court declared a mistrial on March 21, 2006.  *Id.* at 57.

After the mistrial, the State dismissed the indictment against Harper in cause number 1006667, and re-filed the same charges with the grand jury.  *See Clerk's Record*, at 69.  The grand jury returned a new indictment against Harper in cause number 1064870 on April 12, 2006.  *See id.* at 2.  The new indictment contained the same allegation as the original, which

accused Harper of committing aggravated robbery by using or exhibiting a deadly weapon, namely, a knife. *See id.* In addition to this primary allegation, however, the State included an alternative theory of the charged offense, which accused Harper of committing the aggravated robbery by using or exhibiting a deadly weapon in the form of "a metal object otherwise unknown to the jury." *Id.*

Harper's second trial commenced on May 19, 2006. Unlike the first proceeding, the trial court's instructions to the second jury included an option to convict Harper of the lesser-included offense of simple robbery, which does not require a finding that a deadly weapon was used to commit the offense.[2] *See Clerk's Record*, at 46-51, 144-49. The jury at Harper's second trial acquitted him of aggravated robbery as alleged in the indictment, but found Harper guilty of the lesser-included offense of robbery. *See id.* at 150.

Harper admitted that he had several prior convictions for robbery, that he had been on parole at the time of his arrest, and that he had a drug problem. *See Court Reporter's Record*, vol. 3, at 232-35. At the punishment phase of the proceeding, Harper conceded that the enhancement allegations regarding his prior felony convictions for aggravated robbery in cause numbers 312879 and 473251 were true. *See id.*, vol. 5, at 3-4. In addition to his

---

[2]     In Texas, a person commits the offense of "theft" if he "unlawfully appropriates property with intent to deprive the owner of property." *See* TEX. PENAL CODE ANN. § 31.03(a). A person commits the offense of "robbery" if, "in the course of committing theft and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *See* TEX. PENAL CODE ANN. § 29.02(a). A person commits "aggravated robbery" when he commits robbery and he causes serious bodily injury to another, or uses or exhibits a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03(a).

aggravated robbery convictions in cause numbers 312879 and 473251, Harper stipulated that

he had three other prior felony convictions for aggravated robbery in cause numbers 312878,

312877, and 312876. *See id.*, at vol. 6, State's Ex. 9. He also had a prior felony conviction

for possessing a prohibited substance in a correctional facility. *See id.* After hearing all of

the evidence, the jury sentenced Harper to serve 99-years' imprisonment. *See id.*, vol. 5, at

13. While imposing the sentence, the trial court granted the State's pretrial motion to

cumulate that sentence with an unexpired 45-year term of imprisonment that had been

imposed against Harper previously as the result of his aggravated robbery conviction in cause

number 473251. *See id.* at 13-15.

On direct appeal, Harper challenged the factual sufficiency of the evidence in support

of his robbery conviction. The state court of appeals found that the evidence was sufficient

based on the following proof presented at trial:

> Kayla Vuong worked as a cashier at a Baskin Robbins ice cream parlor
> located on Bellaire and Chimney Rock in the City of Bellaire, Texas. At about
> 1:00 p.m. on the afternoon of November 8, 2004, Vuong had just finished
> serving ice cream to a couple in line, who then left the store, when she turned
> her attention to [Harper]. She served him his ice cream, and when she opened
> the cash register to collect his money, [Harper] pulled out what Vuong
> believed was a knife, told her to be quiet, and took approximately $100 from
> her cash register. Vuong then called police and reported the robbery. There
> was no video-taped surveillance system in place at the store at that time.
>
> When officers arrived on the scene around 1:19 p.m., they were
> informed that some citizens had seen a black male running out of the Baskin
> Robbins. Vuong described the suspect to the officers as a black male wearing
> dark pants and a dark, striped shirt.
>
> Roy Ledesma, a City of Houston worker, saw [Harper] come out of an
> apartment complex and enter a convenience store. Ledesma described [Harper]

4

as wearing black jeans and a dark colored shirt and having "real short" hair and no facial hair.  Ledesma also testified that [Harper] had not been sweating.

[Harper] was then seen by two plain-clothes police officers, Lieutenant Leal and Sergeant Bartlett, who were in an unmarked car at the convenience store.  When confronted by the officers, [Harper] fled.  Lieutenant Leal testified that [Harper] was "very sweaty," and Sergeant Bartlett testified that [Harper] may have been sweating, although not "profusely."

[Harper] was eventually caught about 50 yards from the convenience store location and arrested at 1:32 pm, approximately 14 minutes after Vuong's call reporting the robbery.  Shortly thereafter, police took Vuong to the convenience store, where she identified [Harper], who was in police custody at the time, as the man who had robbed her.  Vuong identified him because he was wearing the same clothes and testified that he had no beard and short hair[.]

After [Harper]'s arrest, the police recovered $179.58, including four rolls of coins, from [Harper].  During booking, [Harper] stated that he had dropped the knife when he was running away from the scene. The knife was never located.

*Harper v. State*, No. 01-06-00495-CR, 2007 WL 1775982, *1 (Tex. App. — Houston [1st Dist.] June 21, 2007) (footnote omitted).  Based on this evidence, the court of appeals rejected Harper's appeal and affirmed the conviction in an unpublished opinion. *See id.* at 2007 WL 1775982, *4.  Thereafter, on October 31, 2007, the Texas Court of Criminal Appeals refused Harper's petition for discretionary review.

Harper challenged his conviction further by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure.  In that application, Harper argued that he was entitled to relief from his conviction for the following reasons:  (1) the State "illegally amended" the indictment after his first trial resulted in a hung jury; (2) his second trial violated the constitutional prohibition against double jeopardy; (3) the evidence

was insufficient to support his robbery conviction; (4) the trial court abused its discretion by cumulating his sentence with an unexpired term of imprisonment from a prior conviction; and (5) an "inadmissible statement" was used against him at his trial. Harper argued further that he was denied effective assistance of counsel at trial and on his direct appeal. The state habeas corpus court, which also presided over both of Harper's trials, entered findings of fact and concluded that Harper was not entitled to relief. *See Ex parte Harper*, No. 10,976-05 (Writ No. 1064870-B).[3] The Texas Court of Criminal Appeals agreed and denied relief, without a written order, based on the trial court's findings. *See id.* (action taken at November 5, 2008).

Harper now seeks a federal writ of habeas corpus to challenge his state court conviction under 28 U.S.C. § 2254. In his pending petition and supporting memorandum, Harper raises the same or similar claims that were rejected previously on state habeas corpus review. [Docs. # 1, # 2]. The respondent has filed a motion for summary judgment, arguing that Harper fails to show that he is entitled to federal habeas corpus relief. [Doc. # 15]. Harper disagrees and he has requested an evidentiary hearing on his claims for ineffective assistance of counsel. [Docs. # 16, # 17]. These contentions are addressed under the applicable federal habeas corpus standard of review, which is set forth below.

---

[3]     Harper filed one prior state writ application to challenge his robbery conviction in cause number 1064870. The Texas Court of Criminal Appeals dismissed for lack of jurisdiction because Harper filed it while his direct appeal was still pending. *See Ex parte Harper*, No. 10,976-04 (Writ 1064870-A). Three other writ applications are in the record. None of them pertain, however, to the challenged conviction in this case. *See Ex parte Harper*, No. 10,976-03, -02, -01.

## II.    STANDARD OF REVIEW

The respondent's motion for summary judgment must be determined in compliance with the federal habeas corpus statutes. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).   Federal habeas corpus proceedings filed after April 24, 1996 are governed by provisions of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA was enacted, at least in part, to ensure comity, finality, and deference to state court determinations by limiting the scope of collateral review and raising the standard for federal habeas relief.  *See Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003) (citations omitted). The federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).  Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (quotation omitted).

To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies.  For claims adjudicated on the merits, the AEDPA standard provides that a petitioner is not entitled to relief unless he shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C.

§ 2254(d)(1). A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000); *Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir. 2009). A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409. The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)), *cert. denied*, — U.S. —, 2009 WL 3162010 (Oct. 5, 2009).

The deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or fails to explain its decision. *See Early v. Packer*, 537 U.S. 3, 7 (2002). Likewise, a federal habeas corpus court's inquiry under § 2254(d)(1) is not altered where the state court denies relief without a written opinion. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). For such a situation, a reviewing court (1) assumes that the state court applied the proper "clearly established Federal law"; and (2) then determines whether its decision was "contrary to" or "an objectively

unreasonable application of" that law. *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

A state court's findings and conclusions are entitled to deference unless the petitioner shows that they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008), *cert. denied*, — U.S. —, 129 S. Ct. 1306 (2009). A state court's findings of fact are presumed to be correct on federal habeas review, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)); *see also Sumner v. Mata*, 455 U.S. 591, 597 (1982) (holding that findings by a state appellate court are entitled to the same deference owed to findings by trial courts). The petitioner's claims, which are construed liberally as required by *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are discussed below under this deferential standard.

## III.   DISCUSSION

### A.   Illegal Amendment

Harper notes that he was indicted initially in cause number 1006667, which alleged that he robbed the victim with a knife. After the jury deadlocked at the guilt-innocence phase of the trial, resulting in a mistrial, the State dismissed the original indictment in cause number

1006667, and re-filed the charges in a new indictment in cause number 1064870, which added an alternative theory of the offense.  Insisting that the alternative theory was added without approval of the grand jury, Harper complains that the trial court erred by allowing the State to "illegally amend" the indictment in violation of the Grand Jury Clause found in the Fifth Amendment to the United States Constitution.[4]   [Doc. # 16, at 27-28].

The state habeas corpus court rejected this claim, finding that there was no unauthorized or unlawful amendment to the indictment. *Ex parte Harper*, No. 10,976-05 at 170.  In that respect, the state habeas corpus court observed that the State dismissed the original indictment in cause number 1006667 and obtained a new indictment from the grand jury for the same felony offense of aggravated robbery in cause number 1064870.  *See id.* The state habeas corpus court also rejected Harper's implicit assertion that the trial court erred by allowing the State to obtain the new indictment in cause number 1064870, which included a new theory of the offense.  *See id.*  In rejecting that argument, the state habeas court found that, when a new trial is granted under these circumstances "a defendant can be retried on the original indictment or on a new indictment charging the same offense." *Id.* (citing *Whitehead v. State*, 286 S.W.2d 947 (Tex. Crim. App. 1956)).  Thus, the state habeas corpus court concluded that Harper failed to show that the State was erroneously permitted

---

[4]     The Grand Jury Clause of the Fifth Amendment guarantees "that no person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury . . . ."  U.S. CONST. amend V.

to amend the indictment or to otherwise obtain a new one for purposes of a new trial.  *See id*.

Harper maintains that he is entitled to relief because the alternative theory presented in cause number 1006667 was unlawfully obtained without the grand jury's approval.  As an initial matter, it is worth noting that the Grand Jury Clause of the Fifth Amendment has not been incorporated through the Fourteenth Amendment and has been held not to be applicable to the states.  *See* 2 Ronald D. Rotunda & John E. Nowak, TREATISE ON CONSTITUTIONAL LAW § 14.2, at 347-48 (2d ed. 1992) (citing *Hurtado v. California*, 110 U.S. 516 (1884)); *see also Duncan v. Louisiana*, 391 U.S. 145, 148 (1968) (listing other guarantees found in the Bill of Rights which have been incorporated or protected against state action by the Due Process Clause of the Fourteenth Amendment).  In other words, the provision relied upon by Harper in this instance "does not prevent states from instituting prosecutions without an indictment," because "the Supreme Court has concluded that neither the Grand Jury Clause of the Fifth Amendment nor the Due Process Clause of the Fourteenth Amendment requires the state to afford the accused the right to grand jury review before trial."  *Wilkerson v. Whitley*, 28 F.3d 498, 502-03 (5th Cir. 1994) (citing *Hurtado v. California*, 110 U.S. 516, 534-35 (1884)).  The right to a grand jury indictment in felony cases is, however, guaranteed by the Texas Constitution.  *See* TEX. CONST. art. I, § 10.[5]

---

[5]     Article I of the Texas Constitution provides that "no person shall be held to answer for a criminal offense, unless on indictment by a grand jury," and the accused "shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof." TEX. CONST. art. I, § 10 (amended 1918).

The record confirms that the indictment against Harper in cause number 1064870, which contains the alternative theory at issue, was formally issued by a grand jury. *See Clerk's Record*, at 2. Therefore, Harper does not show that the State violated his rights by proceeding to trial on a theory that was not approved by a grand jury in a properly issued indictment. More importantly, Harper fails to show that the trial court erred by allowing the State to proceed with the new indictment. As the state habeas corpus court correctly observed, where a new trial is granted, Texas law allows a defendant to be tried on the original indictment or on a new indictment. *See Whitehead v. State*, 286 S.W.2d 947, 948 (Tex. Crim. App. 1956)); *see also Sorola v. State*, 769 S.W.2d 920, 924 (Tex. Crim. App. 1989); *Foster v. State*, 635 S.W.2d 710, 712 (Tex. Crim. App. 1982); *Andrews v. State*, 436 S.W.2d 546, 548 (Tex. Crim. App. 1969).

Based on this record, Harper does not demonstrate that the indictment in cause number 1064870 was unlawfully amended or obtained without a grand jury's imprimatur. Further, Harper does not show that, by rejecting his claim that the indictment was amended or obtained illegally, the state habeas corpus court's decision was contrary to or involved an unreasonable application of clearly established federal law as decided by the United States Supreme Court. Accordingly, Harper is not entitled to relief on this issue.

### B.   Double Jeopardy

Harper contends that, because the jury did not reach a verdict in the first trial, the State failed to present sufficient evidence to prove its case against him and that his second trial violated the Double Jeopardy Clause found in the Fifth Amendment to the United States

Constitution.  The state habeas corpus court rejected this claim, noting that "the double jeopardy provision in the Fifth Amendment does not mean that every time a defendant is put to trial he is entitled to go free if the trial fails to end in a final judgment." *Ex parte Harper*, No. 10,976-05 at 171 (citing *Wade v. Hunter*, 336 U.S. 684 (1949)).  The state habeas corpus found further that Harper was not entitled to relief because he failed to show "that he was prosecuted for the same offense after conviction or acquittal, or that he is suffering multiple punishments for the same offense in violation of the double jeopardy clause of the Fifth Amendment." *Ex parte Harper*, No. 10,976-05 at 170 (citing *North Carolina v. Pearce*, 395 U.S. 711, 109  S. Ct. 2072 (1969)).

The Double Jeopardy Clause of the Fifth Amendment, which was made applicable to the states through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  Historically, "[t]he constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States*, 355 U.S. 184, 187 (1957).  The Supreme Court has recognized that, once a defendant has been placed in jeopardy in the first instance, the Fifth Amendment Double Jeopardy Clause protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense. *See, e.g., North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

13

In a criminal prosecution involving a jury trial, jeopardy is said to attach for purposes of the Double Jeopardy Clause when the jury is impaneled and sworn. *See Crist v. Bretz*, 437 U.S. 28, 38 (1978).  Noting that jeopardy attached at his first trial, which ended with a hung jury, Harper insists that his second trial constituted a successive prosecution which violated the Fifth Amendment.  Harper is mistaken.  Once jeopardy has attached, "the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Richardson v. United States*, 468 U.S. 317, 325 (1984).  In other words, "[i]n the context of a successive prosecution, a defendant's double jeopardy concerns arise only after original jeopardy attaches and terminates." *United States v. Garcia*, 567 F.3d 721, 730 (5th Cir. 2009) (citing *Richardson*, 468 U.S. at 325).  The Fifth Circuit has observed that there are only three possible "jeopardy terminating events" that would bar a retrial: "(1) an acquittal, (2) a trial court determination of insufficiency leading to a directed verdict of acquittal, and (3) an unreversed determination on direct appeal that there was insufficient evidence to support the conviction." *Garcia*, 567 F.3d at 730 (quoting *Vanderbilt v. Collins*, 994 F.2d 189, 195 (5th Cir. 1993)).  Harper fails to show that a jeopardy terminating event occurred prior to the second trial in his case.

Here, Harper maintains that the mistrial which ended his first trial proceeding was equivalent to an acquittal because the jury was unable to reach a verdict.  Harper reasons that the jury could not reach a verdict because the State failed to present sufficient evidence to prove its case, resulting in a mistrial that terminated the jeopardy which attached when the first jury was impaneled and sworn.  The Supreme Court has emphasized, however, that a

14

hung jury is not the equivalent of an acquittal regardless of the sufficiency of the evidence presented at a defendant's first trial:

> Justice Holmes' aphorism that "a page of history is worth a volume of logic" sensibly applies here, and we reaffirm the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected. The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree. Regardless of the sufficiency of the evidence at petitioner's first trial, he has no valid double jeopardy claim to prevent his retrial.

*Richardson*, 468 U.S. 325-26; *see also Yeager v. United States*, — U.S. —, 129 S. Ct. 2360, 2366 (2009) (observing that, "a jury's inability to reach a decision is the kind of 'manifest necessity' that permits the declaration of a mistrial and the continuation of the initial jeopardy that commenced when the jury was impaneled") (citations omitted); *Sattazahn v. Pennsylvania*, 537 U.S. 101, 109 (2003) (noting that, "[n]ormally, a retrial following a 'hung jury' does not violate the Double Jeopardy Clause "). Thus, the mere declaration of a mistrial based on "the failure of a jury to reach a verdict is not an event which terminates jeopardy." *Richardson*, 468 U.S. at 325.

Harper has failed to demonstrate that jeopardy actually terminated as the result of the mistrial.[6] Accordingly, based on this record, Harper does not demonstrate his robbery

---

[6]     In support of his argument, Harper relies primarily on the Supreme Court's decision in *Burks v. United States*, 437 U.S. 1 (1978). [Doc. # 2, at 10, 46; Doc. # 16, at 30-31]. In *Burks*, the Supreme Court held that a retrial is barred where a defendant has successfully obtained a reversal of his conviction on appeal on the grounds that the evidence was "legally insufficient" to support the jury's verdict, meaning that the trial court should have entered a judgment of acquittal. *See id.* at 16. The *Burks* decision is inapposite in this instance because, as the Supreme Court has observed, "*Burks* did not deal with the situation in which

(continued...)

conviction following a second trial violated the prohibition against successive prosecutions found in the Double Jeopardy Clause.[7]  Likewise, Harper fails to show that, by rejecting this claim, the state habeas corpus court's decision was contrary to or involved an unreasonable application of clearly established federal law as decided by the United States Supreme Court. Accordingly, he is not entitled to relief on this issue.

## C.    Factual Sufficiency

Harper contends that the evidence was factually insufficient to support his conviction on the lesser-included offense of robbery.  As noted above, the state court of appeals found that there was sufficient evidence to support Harper's robbery conviction as a matter of Texas law.  *Harper v. State*, No. 01-06-00495-CR, 2007 WL 1775982, *1 (Tex. App. — Houston [1st Dist.] June 21, 2007, pet. ref'd).  The respondent correctly notes that any

---

[6](...continued)

> a trial court declares a mistrial because of a jury's inability to agree on a verdict." *Richardson*, 468 U.S. at 323. Rather, "*Burks* established only that an appellate court's finding of insufficient evidence to convict on appeal from a judgment of conviction is for double jeopardy purposes, the equivalent of an acquittal." *Id.* at 325.  Because no reviewing court found that the evidence was legally insufficient at Harper's first trial, the holding announced in *Burks* does not apply.

[7]     In addition to Harper's claim that his conviction violated the prohibition against double jeopardy, Harper argues further that his second trial was barred by the doctrine of collateral estoppel.  Collateral estoppel, also known as issue preclusion, "bars successive litigation of 'an issue of fact or law' that 'is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment.'" *Bobby v. Bies*, — U.S. —, 129 S. Ct. 2145, 2152 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1980));  *see also Ashe v. Swenson*, 397 U.S. 436, 443 (1970) ("[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.").  Because there was no final judgment entered after Harper's first trial, the doctrine of collateral estoppel does not apply. Therefore, this Court declines to address this claim further.

16

challenge to the factual sufficiency of the evidence is not cognizable on federal habeas corpus review.

A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks only whether a constitutional violation infected the petitioner's state trial. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). Under Texas law, evidence is factually insufficient as a matter of law if the proof adduced at trial does not conform to the elements listed in the jury charge. *See Brown v. Collins*, 937 F.2d 175, 176 (5th Cir. 1991). This determination is one based on state evidentiary law and, therefore, presents no issue of "constitutional caliber." *Id.*; *see also Pemberton*, 991 F.2d at 1223 (explaining that state evidentiary law "has no effect on our review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution"). Because Harper's challenge to the factual sufficiency of the evidence does not implicate a constitutional issue, federal habeas corpus review is unavailable for this claim.[8]

### D.    Cumulative Sentences

Harper contends that he is entitled to relief because the trial court improperly cumulated the 99-year sentence that he received for robbery in cause number 1064870, with

---

[8]    Here, Harper appears to argue that the State's failure to prove all elements of the offense in the first trial, which resulted in a hung jury, barred his subsequent prosecution because the evidence was legally insufficient. This argument was rejected above, however, in connection with Harper's double jeopardy claim. Because Harper does not allege or show that the evidence was legally insufficient to support the robbery conviction entered at his second trial, the Court does not address this claim further.

an unexpired 45-year term of imprisonment that was imposed against him previously after

his conviction for aggravated robbery in cause number 473251.  In Texas, a trial court has

the discretion to cumulate or stack a defendant's sentence in a "second or subsequent

conviction" to run consecutive to that of a prior conviction.  TEX. CODE. CRIM. PROC. art.

42.08(a).  Harper does not claim that his sentences were stacked improperly in violation of

this provision.  Instead, Harper complains that "there was . . . no oral pronouncement that

[his] sentence would be cumulated."  [Doc. # 2, at 62].  Thus, Harper's primary argument is

that the trial court violated Article 42.03, § 1(a) of the Texas Code of Criminal Procedure,

by not imposing the cumulated sentence in his presence.[9]

The state habeas corpus court rejected Harper's claim that the sentence was not

properly imposed in compliance with Texas law, finding that Harper's allegations were

refuted by the record:

> The Reporter's Record reflects that the jury verdict was read aloud to [Harper];
> [Harper] was given an opportunity to make a statement prior to sentencing; the
> trial judge sentenced [Harper] to ninety-nine (99) years confinement; and
> immediately thereafter, the trial judge granted the State's motion to accumulate
> the sentence in [Harper]'s presence.

*Ex parte Harper*, No. 10,976-05 at 171 (citing *Court Reporter's Record*, vol. 5, at 13-14).

Harper does not dispute these fact findings or refute them with clear and convincing evidence

to the contrary.  Therefore, the state court's fact findings are presumed correct.  28 U.S.C.

---

[9]     Article 42.03, § 1(a) of the Texas Code of Criminal Procedure provides that, subject to
certain exceptions that are not pertinent here, "sentence shall be pronounced in the
defendant's presence."

§ 2254(e)(1). More importantly, the state court's findings are supported by the record, which is summarized briefly below.

The record reflects that the State filed a pretrial motion to cumulate Harper's sentence in cause number 1064870 with a sentence assessed against him previously in cause number 473251. *See Clerk's Record*, at 135. It is undisputed that Harper received a 45-year prison sentence as the result of his conviction for aggravated robbery in that case and that the sentence imposed in cause number 473251 had not yet expired at the time he was convicted of robbery in cause number 1064870. The record shows that the trial court granted the State's motion to cumulate the sentences, orally and in writing, at the close of the punishment phase of the trial. *See Court Reporter's Record*, vol. 5, at 13-14; *see also Clerk's Record*, at 135. Thus, the record confirms that the trial court granted the State's motion to cumulate the sentences in Harper's presence.

Based on this record, Harper fails to demonstrate that the trial court erred by granting the State's motion to cumulate his punishment or that his sentence was imposed in violation of Texas law.[10] Even assuming that there was an error, Harper's allegation fails to state a valid claim for relief on federal habeas corpus review. As the Supreme Court has held

---

[10] In his supporting memorandum, Harper appears to add that the order cumulating his sentence is "void" because the trial court failed to identify him as the person previously convicted of aggravated robbery in cause number 473251. [Doc. # 2, at 64]. However, there was no dispute at trial that Harper had a prior conviction for aggravated robbery in cause number 473251 and that he received a 45-year sentence in that case. Harper stipulated to this prior conviction and sentence during the punishment phase of the trial. *See Court Reporter's Record*, vol. 6, State's Ex. 9. The State also provided evidence in the form of Harper's penitentiary packet for that conviction. *See id.* State's Ex. 11. Accordingly, this claim has no merit.

repeatedly, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Harper does not establish that, by cumulating the sentences, the trial court entered its judgment in a fundamentally unfair manner.  Harper does not otherwise show that, by rejecting this claim, the state habeas corpus court's decision was contrary to or involved an unreasonable application of clearly established federal law as decided by the United States Supreme Court.  Accordingly, Harper is not entitled to relief on this issue.

### E.    Inadmissible Statement

Harper argues that an "inadmissible statement" was used against him at his trial. Specifically, Harper objects that the trial court allowed a police officer (Bellaire Police Officer Aristeo Carranza, Jr.) to testify that he heard Harper admit that a knife had fallen out of his pocket while he was running from the scene of the robbery.  Harper contends that the statement was admitted in violation of the holding in *Miranda v. Arizona*, 384 U.S. 436 (1966), which generally precludes the use of involuntary statements made during custodial interrogation against an accused at trial.[11]  Thus, Harper claims that the trial court erred by denying his motion to suppress this statement and his objections to Officer Carranza's testimony.

---

[11]    Harper also complains that the trial court erred under Article 38.22, § 3(a) of the Texas Code of Criminal Procedure, which precludes the admission of oral statements by an accused as the result of custodial interrogation unless certain safeguards are met.

The state habeas corpus court found that, according to Officer Carranza's testimony, Harper's statement regarding the knife falling out of his pocket "was made voluntarily and not in response to any question asked by Officer Carranza." *Ex parte Harper*, No. 10,976-05 at 171. The state court concluded, therefore, that the statement was not inadmissible. *See id*. Alternatively, the state habeas corpus court found that Harper failed to show that he was harmed as a result of the decision to admit Officer Carranza's testimony because the jury did not find that a knife was used to commit the offense and acquitted Harper of the aggravated robbery charge. *See id*.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court outlined certain rights of which suspects must be advised by law enforcement officers before custodial interrogation takes place. These rights include: (1) the right to remain silent; (2) that any statement made may be used against them at trial; (3) the right to the presence of an attorney during questioning; and (4) if a suspect cannot afford an attorney, one will be appointed for him. *See id.* at 478-79. These familiar procedural safeguards are designed to protect an accused's Fifth Amendment privilege against self-incrimination during custodial interrogation.[12]  *See Gachot v. Stalder*, 298 F.3d 414, 418 (5th Cir. 2002). It is well-settled that, once an accused has invoked these rights, he is "not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further

---

[12]     The Fifth Amendment privilege against self-incrimination provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V.

communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S.

477, 484-85 (1981).

As the state habeas corpus court correctly noted, voluntary statements that are not the

product of custodial interrogation are admissible in a criminal trial.  *Miranda*, 384 U.S. at

478.  The test for determining voluntariness is well-established:

> Is the confession the product of an essentially free and unconstrained choice
> by its maker? If it is, if he has willed to confess, it may be used against him.
> If it is not, if his will has been overborne and his capacity for
> self-determination critically impaired, the use of his confession offends due
> process.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973).  To establish that an inculpatory

statement was involuntary, the defendant bears the burden to show that but for police

coercion he would not have given the confession. *See Colorado v. Connelly*, 479 U.S. 157,

163-64 (1986); *Muniz v. Johnson*, 132 F.3d 214, 219 (5th Cir. 1998), *cert. denied*, 523 U.S.

1113 (1999).  To meet this burden, a defendant must demonstrate that it resulted from

coercive police conduct by establishing a link between the alleged coercive conduct and the

defendant's confession.  *See Connelly*, 479 U.S. at 163-65; *Hopkins v. Cockrell*, 325 F.3d

579, 584 (5th Cir. 2003).  Harper does not make that showing here.

The record shows that Harper's statement was voluntarily made while Officer

Carranza was attempting to gather limited information for booking.  Officer Carranza

testified that, at the time he encountered Harper, he was working as the sole "jail officer" on

duty for the Bellaire Police Department.  *See Court Reporter's Record*, vol. 3, at 189.

Officer Carranza explained that, in his job as a jail officer, he was charged with processing

"all of the incoming individuals who are prisoners" into the central jail by recording "all of their data," including their name, address, and physical characteristics for purposes of identification.  *Id.*  As part of the "booking" process, Officer Carranza was required by official procedures to search each individual prisoner to ensure "that no prohibited weapons or any type of weapons come into the institution for the safety and security of the other prisoners and themselves," as well as the officers.  *Id.* at 190.  Over an objection by defense counsel, Officer Carranza testified that, while booking Harper into the jail and searching him for contraband, Harper remarked that he did not have any weapons on him because he "dropped the knife when he was running away" from the scene of the robbery.  *Id.* at 194. Officer Carranza conceded that Harper had not been given *Miranda* warnings before the statement was made, but he testified that Harper's remark was not prompted by any questioning.  *See id.*  Officer Carranza explained that he was not involved in the investigation of the offense, that he had no information about the charges against Harper, and that his only focus at the time was booking Harper into the jail.  *See id.* at 190-93.  During the book-in process, Officer Carranza also confiscated $179.58 in United States currency, including several rolls of coins, and .9 grams of cocaine from Harper's pocket.  *See id.* at 195, 197-98.

There is an exception to the *Miranda* rule for routine booking questions that cover a person's name, address, height, weight, eye color, date of birth, and current age. *See Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990); *Presley v. City of Benbrook*, 4 F.3d 405, 408 n. 2 (5th Cir.1993) ("In the wake of *Muniz*, it has been universally accepted by courts, both federal and state, that a routine booking question exception to the Fifth Amendment

exists."). The inquiry that elicited the incriminating statement at issue, while not fitting within the recognized exception for booking questions, was attendant to the booking process and related to administrative concerns involving safety and security. Harper's response to Officer Carranza's administrative inquiry was clearly spontaneous and not made in response to coercive police conduct. It follows that Harper fails to show that his inculpatory statement was involuntarily made or that the trial court erred by allowing Officer Carranza's testimony. Absent a showing that his statement was coerced and admitted at trial in violation of the United States Constitution, Harper further fails to establish that the state court's decision to reject this claim is contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

Alternatively, as the state court habeas corpus court observed, the jury did not make a finding that a deadly weapon was used to commit the offense, acquitting Harper of aggravated robbery, and convicting him instead of simple robbery. As noted above, a conviction for robbery does not require a finding that a deadly weapon was used to commit the offense. Thus, even if the trial court erred by admitting testimony about the knife, Harper does not show that his conviction was tainted by constitutional error that had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (holding that, on federal habeas corpus review under 28 U.S.C. § 2254, the *Brecht* standard of harmless error applies whether or not the state court conducted a harmlessness review under *Chapman*). Because Harper fails to show that the error was not harmless, or that the state habeas corpus

court's conclusion was objectively unreasonable, he is not entitled to federal habeas relief on this issue.

### F.    Ineffective Assistance of Counsel at Trial

Harper complains that he was denied effective assistance of counsel at trial because his attorney failed to raise certain objections.  The state habeas corpus court rejected this claim, finding that Harper failed to show that his trial counsel's conduct fell below an objective standard of reasonableness under professional norms or that, but for his trial counsel's alleged deficient conduct, there was "a reasonable probability that the result of the proceeding would have been different."  *Ex parte Harper*, No. 10,976-05 at 172 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (citations omitted)).

The Supreme Court has recognized that the Sixth Amendment guarantees criminal defendants the right to have the assistance of counsel at trial.  *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  The right to counsel guaranteed by the Sixth Amendment includes "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency.  *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable."  *Strickland*, 466 U.S. at 687.

25

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness.  *See id.* at 687-88.  To demonstrate deficient performance on his counsel's part, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  That is, the defendant must overcome the presumption that, under the circumstances, "the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004).

Deficient performance, standing alone, is not sufficient to prevail under *Strickland*. Once a petitioner establishes error by his defense counsel, then he must still demonstrate actual prejudice as a result of his counsel's deficient performance.  Performance is prejudicial only if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome."  *Id.*  Harper's allegations that his counsel was deficient for failing to raise certain objections are addressed separately below.

### 1.    Failure to Object to the Amended Indictment

Harper contends that his counsel was deficient for failing to object to the amended indictment in cause number 1064870, which the State obtained from the grand jury after his first trial ended in a hung jury.  Harper repeats his argument that, by obtaining a new indictment following the mistrial, the State "illegally amended" the charges against him.  As outlined above, however, the state habeas corpus court rejected this argument, observing that when a new trial is granted under these circumstances "a defendant can be retried on the original indictment or on a new indictment charging the same offense."  *Ex parte Harper*, No. 10,976-05 at 170 (citing *Whitehead v. State*, 286 S.W.2d 947 (Tex. Crim. App. 1956)).  Harper has failed to show that the indictment was amended improperly or that his counsel had a valid objection to make.

"Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."  *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).  Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, Harper fails to demonstrate deficient performance or actual prejudice.  *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted);  *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.");  *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted);  *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").  Therefore, Harper fails to show that the state court

unreasonably applied *Strickland* to his claim that counsel was ineffective for failing to object to the indictment.

### 2. Failure to Object to an Abandoned Enhancement Paragraph

Harper contends that his counsel was deficient for failing to object after the State filed a motion to abandon the second enhancement allegation lodged in the indictment. Harper complains that this enhancement allegation, which referenced his prior conviction for aggravated robbery in cause number 473251, was later cumulated with the 99-year sentence imposed by the jury in cause number 1064870. Harper apparently reasons that, but for his attorney's failure to object to the State's motion, the trial court would not have been able to cumulate or stack his sentences in cause numbers 473251 and 1064870.

The state habeas corpus court found that trial counsel was not deficient for failing to object on these grounds because the enhancement paragraph at issue was not abandoned. *See Ex parte Harper*, No. 10,976-05 at 172. The state habeas corpus court found further that Harper "pled true to both enhancement paragraphs of the indictment in cause number 1064870, and the jury found both enhancement paragraphs to be true[.]" *Id.* (citation omitted). The state court's findings of fact are entitled to the presumption of correctness, 28 U.S.C. § 2254(e)(1), and Harper does not meet his burden to rebut these findings with clear and convincing evidence.

The record confirms that the State did not abandon an enhancement paragraph in Harper's case. Moreover, Harper does not articulate that his counsel had any valid basis to object. Based on this record, Harper fails to show that the state court's decision to reject his

ineffective-assistance claim objectively unreasonable or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, Harper is not entitled to relief on this claim.

### 3.     Failure to Object to a Parole Officer's Testimony

Harper takes issue with testimony given by the State's rebuttal witness, parole officer Benjamin Coleman. Coleman testified about the contents of Harper's parole records and the conditions of his parole. Harper contends that his counsel was deficient for failing to object to this testimony because Coleman was not his supervising parole officer and had no "personal knowledge" of the terms and conditions of his release.

The state habeas corpus court found that Benjamin Coleman testified at trial in cause number 1064870 regarding Harper's parole record in response to testimony by Harper about the conditions of his release on parole. *See Ex parte Harper*, No. 10,976-05 at 172. The state habeas corpus court further found that Harper failed to show that Coleman's testimony was inadmissible or that any objection by counsel would have been sustained. *See id.* Thus, the state habeas corpus court concluded that Harper's counsel was not deficient for failing to object to Coleman's testimony.

The record shows that Harper presented testimony from two defense witnesses during the guilt-innocence phase of the trial in an effort to show that he did not commit the aggravated robbery, which occurred at approximately 1:00 p.m. on November 8, 2004. Harper's sister (Brenda Cook) and her son (James Black) testified that Harper spent the night

with them on November 7, 2004, and that they dropped Harper off at his place of employment at around 12:30 or 12:45 p.m. on November 8, 2004. *See Court Reporter's Record*, vol. 3, at 207, 218.

Harper also testified on his own behalf during the guilt-innocence phase of the trial and he insisted that did not commit the aggravated robbery that reportedly occurred on November 8, 2004. *See id*. at 226-28. Harper testified that, at the time the offense occurred, he worked for a staffing company by providing personal assistance for a disabled senior citizen. *See id*. at 231-32. Harper told the jury that, after his sister and her son dropped him off at the apartment complex where his elderly client lived, he went to an adjacent convenience store to sell some "crack cocaine." *Id*. at 227. Harper, who denied being anywhere near the scene of the robbery, was arrested by Bellaire police officers as he left the convenience store. *See id*. Harper acknowledged that he was on parole for a prior robbery conviction and that he had failed to report to his parole officer (Mr. Hutchison) in violation of the terms and conditions of his release. *See id*. at 232-35. Harper explained that he tried to get away from the police because, as a result of his failure to report, he knew that there was a "blue warrant" out for his arrest. *Id*. at 236.

After Harper testified, the prosecutor called Benjamin Coleman as a rebuttal witness. *See Court Reporter's Record*, vol. 3, at 244. Coleman testified that he was a parole officer and a custodian of records for the Texas Department of Criminal Justice. *See id*. at 244-46. Coleman testified that, according to Harper's parole file, Harper had been released from prison onto parole in March of 2004, subject to conditions of release that included electronic

30

monitoring.  *See id*. at 246.  Harper was also required to submit to urinalysis for drug and alcohol testing.  *See id*.  Harper was also required to find employment.  *See id*.  Contrary to Harper's testimony, Coleman reported that his parole file had no information showing that Harper was employed at the time the charged offense occurred.  *See id*. at 247, 254. Coleman disclosed that Harper had also failed to comply with the requirement that he wear an electronic monitor.  *See id*. at 248.

Because Harper attempted to use his employment as an alibi, he fails to show that the prosecutor improperly presented a rebuttal witness to testify that Harper's parole records contained no record that he was employed when the offense occurred.  Therefore, Harper does not establish that his counsel had, but failed to make a valid objection to Coleman's testimony.  Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, Harper fails to demonstrate deficient performance. *See Parr*, 472 F.3d at 256.

Alternatively, even assuming that counsel failed to make an appropriate objection, Harper does not demonstrate actual prejudice.  The record shows that Harper's defense counsel cross-examined Coleman carefully about Harper's employment record.  As a result of defense counsel's questioning, Coleman admitted that Harper's parole file contained copies of checks made out to Harper or Harper's sister, which proved that Harper had been employed as an in-home personal assistant at some point.  *See Court Reporter's Record*, vol. 3, at 254.  Coleman also confirmed on cross-examination that Harper had stopped reporting to his supervising parole officer in June of 2004, well before the aggravated robbery

31

occurred.  *See id.*  Because Coleman could not say whether Harper was employed after June of 2004, the State failed to rebut Harper's contention that he was employed on November 8, 2004, when the aggravated robbery occurred.  Under these circumstances, Harper fails to show that he was prejudiced by any deficiency on his counsel's part with respect to the prosecutor's rebuttal witness.  Because Harper fails to demonstrate deficient performance and actual prejudice, he fails to show that the state court unreasonably applied *Strickland* to his claim that counsel was ineffective for failing to object to Coleman's testimony.

### 4.    Failure to Object to Evidence of Extraneous Offenses

Harper testified on his own behalf at the guilt-innocence phase of the trial and, in doing so, he disclosed on direct examination by his counsel that he had a criminal record that included several prior felony convictions for robbery.  *See Court Reporter's Record*, vol. 3, at 225-37.  Harper, who denied committing the charged offense, explained to the jury that his prior convictions for robbery were "not the same type of robbery" that he was accused of in cause number 1064870, because his prior convictions involved a series of thefts from a dry cleaner or were related to his involvement with drugs.  *See id.* at 232-34. On cross-examination, the prosecutor noted that Harper had several prior felony convictions for aggravated robbery.  *See id.* at 239-40.  Harper complains that his attorney erred by introducing his criminal record and that he should have objected to the admission of this evidence.

Harper fails to show that his counsel had a valid objection to make.  As the respondent notes, an accused puts his character for veracity in issue by taking the stand, and he may be

impeached in the same manner as any other witness.  *See Hammett v. State*, 713 S.W.2d 102,

105 (Tex. Crim. App. 1986).   Under Rule 609 of the Texas Rules of Evidence, prior

convictions for felonies and crimes of moral turpitude are generally admissible for purposes

of impeaching a witness's credibility.[13]  *See* TEX. R. EVID. 609(a). Harper fails to show that

evidence about his prior convictions was inadmissible for purposes of impeachment or that,

but for his counsel broaching the subject on direct examination, the State would not have

been able to cross-examine Harper about his record.

To the extent that Harper complains that his attorney erred by introducing his criminal

record before the State had an opportunity to impeach him with it, counsel's decision was

clearly based on trial strategy.  Strategic decisions made by counsel during the course of trial

are entitled to substantial deference in the hindsight of federal habeas review.  *See Strickland*,

466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be

highly deferential" and that "every effort [must] be made to eliminate the distorting effects

of hindsight"); *see also United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) ("'Informed

strategic decisions of counsel are given a heavy measure of deference and should not be

second guessed.'") (quoting *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999)); *Yohey v.

Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial

---

[13]     Rule 609(a) of the Texas Rules of Evidence provides as follows:  "For the purpose of
attacking the credibility of a witness, evidence that the witness has been convicted of a crime
shall be admitted if elicited from the witness or established by public record but only if the
crime was a felony or involved moral turpitude, regardless of punishment, and the court
determines that the probative value of admitting this evidence outweighs its prejudicial effect
to a party."

techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.").  As the Fifth Circuit has emphasized, a "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 5008) (citing *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (quotation omitted).

Harper does not show that counsel's chosen strategy was invalid in this instance.  In that respect, the record reflects that counsel elected to present a defense based on alibi and mistaken identity, arguing that Harper was innocent of the offense charged in cause number 1064870 in spite of his criminal history.  As noted above, defense counsel presented testimony from two of Harper's family members, who told the jury that Harper was at work at the time the aggravated robbery allegedly took place.  Harper elected to testify in his own defense and he told the jury a similar story, insisting that he did not commit the offense.  Harper does not dispute that his prior felony convictions were admissible for purposes of impeachment.  Under these circumstances, counsel's decision to introduce Harper's criminal record, rather than allow the State to impeach him with a litany of prior convictions, constituted a reasonable strategy to preserve at least some of Harper's credibility.  Harper does not show that his counsel's strategy was so ill chosen that it rendered his trial unfair and he has not overcome the presumption that counsel's decision was reasonable. Therefore, Harper fails to show that the state court unreasonably applied *Strickland* to his claim that counsel was ineffective for failing to object to the evidence of his criminal record.

## G.    Ineffective Assistance of Counsel on Appeal

Harper contends that he is entitled to relief because he was denied effective assistance of counsel on direct appeal.  A claim of ineffective assistance on appeal is governed by the test set out in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires the defendant to establish both constitutionally deficient performance and actual prejudice.  *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* to a claim of ineffective assistance of counsel on appeal).  To establish that appellate counsel's performance was deficient in the context of an appeal, the defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise them.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000). If the defendant succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal."  *Id.*

In this instance, Harper complains that his appellate attorney was deficient for failing to raise claims of ineffective assistance against his trial attorney.  As discussed further above, however, Harper fails to show that any of his claims have merit.  The right to counsel on appeal "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal."  *Robbins*, 528 U.S. at 278. Appellate counsel is not deficient for not raising every non-frivolous issue on appeal. *United States v. Reinhart*, 357 F.3d 521, 524 (5th Cir. 2004) (citing *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 2000)).  To the contrary, counsel's failure to raise an issue on appeal

35

will be considered deficient performance only when that decision "fall[s] below an objective standard of reasonableness." *Id.* This standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id.* "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Id.*

Harper fails to show that his appellate counsel was deficient for failing to raise a non-frivolous claim or that he was denied effective assistance of counsel on appeal under the *Strickland* standard. Harper does not otherwise establish that the state court's decision to reject his ineffective-assistance claims was contrary to or involved an unreasonable application of clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). Therefore, Harper is not entitled to federal habeas corpus relief on these claims. Because Harper has failed to demonstrate a valid claim for relief in this case, the respondent is entitled to summary judgment.

## IV.    EVIDENTIARY HEARING

Harper has requested an evidentiary hearing in this case. [Docs. # 16, # 17]. Harper notes that the state habeas corpus court rejected his claims of ineffective assistance of counsel without a hearing and without requesting affidavits from his trial or appellate attorneys. Harper contends that he is entitled to an evidentiary hearing in federal court so that he may have an opportunity to confront and cross-examine his counsel.

In this case, it appears that the state habeas corpus court did not request affidavits from Harper's trial or appellate counsel because it found that he was not entitled to relief as

a matter of law.  *See Ex parte Harper*, No. 10,976-05 a 170-72.  To the extent that Harper failed to develop any facts related to his claims in state court, the decision whether to hold an evidentiary hearing is governed by 28 U.S.C. § 2254(e)(2).  Under this statute, if an applicant "failed to develop the factual basis of a claim in State court proceedings," then the federal habeas corpus court "shall not hold an evidentiary hearing" on the claim unless the applicant shows that:

> (A)   the claim relies on —
>
> > (i)   a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii)   a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  Harper makes no effort to show that he is entitled to a hearing under this statute.  Likewise, he has not shown that the state court's decision to deny relief on any of his claims resulted in an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(2).

The decision whether to conduct an evidentiary hearing is committed to this Court's discretion.  *See Michael Williams v. Taylor*, 529 U.S. 420, 436 (2000) (stating that it was "Congress' intent to avoid unneeded evidentiary hearings in federal habeas corpus" proceedings); *Robinson v. Johnson*, 151 F.3d 256, 268 (5th Cir. 1998), *cert. denied*, 526 U.S.

37

1100 (1999). An evidentiary hearing is not required if there are "no relevant factual disputes that would require development in order to assess the claims." *Robinson*, 151 F.3d at 268. This Court has been able to resolve all issues raised in this case by referring to the pleadings, the state court records, including the trial transcripts and exhibits. Harper's requests for an evidentiary hearing [Docs. # 16, # 17] are therefore denied.

## V.   CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or

that the issues presented were 'adequate to deserve encouragement to proceed further.'"

*Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right.  Therefore, a certificate of appealability will not issue.

## VI.    CONCLUSION AND ORDER

Based on the foregoing, the court **ORDERS** as follows:

1.      The respondent's motion for summary judgment [Doc. # 15] is **GRANTED**.

2.      The petitioner's requests for an evidentiary hearing [Docs. # 16, # 17]  are **DENIED**.

3.      The petition for a writ of habeas corpus [Doc. # 1] is **DENIED**, and this case is **DISMISSED** with prejudice.

4.      A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on November 18th , 2009.

39

Nancy F. Atlas
United States District Judge